**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>**ALLIED FINANCIAL, INC.**<br><br>Debtor | **CASE NO. 16-00180 (MCF)**<br><br>**CHAPTER 11** |
| **ALLIED FINANCIAL, INC.**<br><br>Plaintiff<br><br>**v.**<br><br>**WM CAPITAL PARTNERS 53, LLC**<br><br>Defendant | **ADV. NO. 16-00033** |

## <u>OPINION AND ORDER</u>

The Plaintiff, Allied Financial, Inc., a chapter 11 debtor, (hereinafter "Allied") filed the instant adversary proceeding against the Defendant, WM Capital Partners 53, LLC, (hereinafter "WM") seeking to redeem a litigated credit[1] under the Puerto

---

[1] Article 1425 of the Puerto Rico Civil Code is known as the "right of debtor to extinguish the litigated credit." 31 L.P.R.A. § 3950. The annotation for Article 1425 on Puerto Rico Laws Annotated uses the term "right of redemption of a litigious credit." <u>Rigoberto Pereira v. International Basic Economy Corp.</u>, 95 P.R.R. 28, 1967 PR Sup. LEXIS 278 (P.R. 1967). In Louisiana, this right is referred to as "sale of litigious rights" under their Civil Code. La. Civ. Code art. 2652. For brevity sake, we will use the term "redemption right."

1

Rico Civil Code, to determine the secured debt amount owed to WM, and to obtain an award of damages under the Puerto Rico Civil Code. After extensive discovery, the parties filed cross motions for summary judgment, oppositions and replies. The court must address whether the right to extinguish a litigated credit applies to the sale of a negotiable instrument. For the reasons stated herein, the court holds that the right to redeem a litigated credit does not apply to the promissory note executed by Allied and the mortgage notes that serve as its collateral because they are negotiable instruments governed by the Puerto Rico Commercial Transactions Act. Consequently, WM's motion for summary judgment as to the redemption right and damages is granted and Allied's motion for summary judgment is denied.

## I.  JURISDICTION

The court has jurisdiction to hear this case, pursuant to 28 U.S.C. § 1334 and the general order of the United States District Court for the District of Puerto Rico dated July 19, 1984, which refers title 11 proceedings to the Bankruptcy Court. This is a core proceeding, pursuant to 28 U.S.C. § 157(b).

## II.  SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, made applicable in bankruptcy by Fed. R. Bankr. P. 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). Summary judgment is appropriate for piercing the pleadings and assessing the proof in order to determine whether a trial is required. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). It is proper to

2

enter summary judgment when the movant shows that there are no genuine disputes of material fact and as a consequence the movant is entitled to judgment as a matter of law. Id. at 322; Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 538 (6th Cir. 2002). When both parties move for summary judgment, each party must carry its own burden of proof as the moving party in its cross motions and as the nonmoving party in response to the other party's motion. Wells Real Estate Inv. Trust II, Inc., 615 F.3d 45, 51 (1st Cir. 2010). If there are no disputed material facts, only one party is entitled to judgment as a matter of law. Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food Corp.), 553 B.R. 197, 205 (Bankr. D.P.R. 2016).  This matter is appropriate for summary judgment disposition as there are no material facts in dispute and it is a matter of law. In re Colarusso, 382 F.3d 51 (1st Cir. 2004) (citing Celotex, 477 U.S. at 322-323); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

### III.  UNDISPUTED MATERIAL FACTS

1. Allied is a corporation that was established on March 14, 2000, in Hato Rey, Puerto Rico, for the purpose of providing credit to entities and individuals with limited access to traditional lending sources. The mortgage notes executed by Allied's borrowers were secured by mortgage deeds that encumbered the real estate of Allied's borrowers.

2. Allied operated with a line of credit from R-G Premier Bank de Puerto Rico, known as a warehousing agreement, since May 30, 2007. Pursuant to this agreement, the mortgage notes obtained by Allied to secure the loans it made to its borrowers, were pledged to R-G Premier Bank as security for the payment of the line of credit.

3

3. On November 30, 2009, Allied and R-G Premier Bank entered into a "Term Loan Agreement." Pursuant to this agreement, Allied borrowed $2,100,000.00 from R-G Premier Bank and the obligation to repay the loan was evidenced by a promissory note authorized by Notary Public Mariluz Cardona Soto, under Affidavit No. 5,559, and signed by Allied's President, José R. Armstrong Petrovich, in San Juan, Puerto Rico.

4. On November 30, 2009, Allied and R-G Premier Bank executed a "Pledge and Security Agreement."

5. Under the "Term Loan Agreement" and the "Pledge and Security Agreement," the collateral offered by Allied under the "Term Loan Agreement" were a series of mortgage notes that had been originally financed under the Mortgage Warehousing Credit Agreement dated May 30, 2007. The agreements did not limit the collateral to those mortgage notes only.

6. The "Term Loan Agreement" was not a mortgage deed and it did not encumber real property.

7. Section 4 of the "Pledge and Security Agreement" bestowed upon R-G Premier Bank the control of the collateral.

8. On April 30, 2010, R-G Premier Bank was intervened by the Puerto Rico Office of the Commissioner of Financial Institutions, which then appointed the Federal Deposit Insurance Corporation (hereinafter "FDIC") as trustee.

9. On April 30, 2010, Scotiabank de Puerto Rico (hereinafter "Scotiabank") purchased a substantial part of R-G Premier Bank's assets, including the loan made to Allied, through a "Purchase and Assumption Agreement."

10. The FDIC endorsed the mortgage notes that serve as collateral to the "Term Loan Agreement" and the promissory note that evidences Allied's debt to

4

Scotiabank.

11. Upon Scotiabank's purchase of R-G Premier Bank's assets, and the FDIC's endorsement of the instruments, it became Allied's creditor and as such could enforce the instrument that evidences the loan made under the "Term Loan Agreement."

12. On May 15, 2012, the debt between Allied and Scotiabank became due. Subsequently, Scotiabank filed a complaint in local court against Allied on November 27, 2013, for the payment of the balance of the debt due under the Term Loan Agreement.[2]

13. On September 23, 2015, Scotiabank entered into a Loan Sale Agreement with WM and transferred a "Non-Performing Puerto Rico Commercial Loan Portfolio." This Portfolio included Allied's loan, Number 1600468761, with the unpaid principal balance of $1,718,067.

14. Scotiabank endorsed the mortgage notes that serve as collateral to the "Term Loan Agreement" and the promissory note that evidences Allied's debt to WM.

15. Upon WM's purchase of the loan portfolio, and Scotiabank's endorsement of the instruments, it became Allied's creditor and as such could enforce the instrument that evidences the loan made under the "Term Loan Agreement."

16. On September 30, 2015, Scotiabank informed Allied of the transfer of the claim to WM.

17. On October 7, 2015, Allied informed WM that it was exercising its right to extinguish a litigated credit and requested information from WM in order to

---

[2] Commonwealth of Puerto Rico, Court of First Instance, San Juan Part, <u>Scotiabank de Puerto Rico v. Allied, Inc., et. al.</u>, Case No. K CD2013-2856 (901).

exercise its rights under the provisions of Article 1425 of the Puerto Rico Civil Code.

18. On January 15, 2016, Allied filed its bankruptcy petition under Chapter 11.

## IV. PROCEDURAL HISTORY

On March 1, 2016, Allied filed the instant complaint against WM. In Count I, Allied alleges that it is entitled to exercise a right to redeem a litigated credit under Article 1425 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3950. In Count II, it claims to have suffered damages from WM's refusal to provide them the information about the Loan Sale Agreement in order to exercise its redemption right. In Count III, Allied seeks to determine the secured status under 11 U.S.C. § 506.

WM initially responded to the complaint with a motion for summary judgment in which they alleged that the right to redeem the litigious credit is pre-empted and inapplicable under the Supremacy Clause of the Constitution and the Financial Institutions Reform, Recovery, and Enforcement Act. Allied filed a cross motion for summary judgment seeking to exercise its redemption right and to determine the credit's purchase price. However, after subsequent litigation, this court denied WM's motion for summary judgment, on the basis that federal law has not preempted the right to redeem the litigious credit and partially granted Allied's motion for summary judgment. At that moment, this court held that Allied had exercised its right to extinguish the litigated credit in a timely manner. Allied Financial, Inc. v. WM Capital Partners 53, LLC (In re Allied Financial, Inc.), 2017 Bankr. LEXIS 1822 (Bankr. D.P.R. June 30, 2017).[3]

---

[3] WM filed an interlocutory appeal before the United States District Court for the District of Puerto Rico and the interlocutory appeal was denied. WM Capital Partners 53, LLC v. Allied Financial, Inc., Civil Case No. 17-2015 (ADC), Docket. No. 9.

After discovery, Allied filed another motion for summary judgment, seeking to establish the purchase price of the credit, currently held by WM in the form of a negotiable instrument.  WM filed a cross motion for summary judgment seeking to dismiss the adversary proceeding, relying on an opinion recently published by the Supreme Court of Puerto Rico, DLJ Mortgage Capital, Inc. v. Santiago Martinez, 2019 T.S.P.R. 129 (July 23, 2019). Both parties opposed each other's motions for summary judgment and they also filed replies and sur-replies. A hearing was subsequently held, and the court took the matter under advisement.

## V.  LEGAL ANALYSIS

The issues before the court are twofold: (1) are the notes purchased by WM from Scotiabank negotiable instruments and if so, (2) does the redemption of a litigious credit right apply to them.

A. Are the notes purchased by WM from Scotiabank negotiable instruments?

According to the Commercial Transactions Act, an instrument is considered negotiable when it contains an unconditional promise to pay a fixed amount of money with interest and other charges described in the promise or order. 19 L.P.R.A. § 504. This section clarifies that the word "instrument" means "negotiable instrument." Id. An instrument must be payable upon presentation or on a determined date and it does not contain any other promise. Id. The statute states that a "note" is a negotiable instrument. Id.

When a note meets the requirements of the definition of a negotiable instrument, it must be treated in accordance to the Commercial Transactions Act. Cruz Consulting v. El Legado, 191 D.P.R. 499, 508-509 (2014).  In Cruz Consulting v. El Legado, the Puerto Rico Supreme Court decided that the Commercial

7

Transactions Act is a special law that governs negotiable instruments and it prevails over a general law. Id. In matters which are the subject of special laws, any deficiency in such law is supplemented by the Puerto Rico Civil Code. 31 L.P.R.A. § 12. As such, the Puerto Rico Civil Code acts as a supplement to the Commercial Transactions Act in areas where this statute is deficient.

On November 30, 2009, Allied obtained a loan under a "Term Loan Agreement" that is evidenced by a promissory note. From a plain reading of this promissory note, the court finds that it contains an unconditional promise to pay the fixed amount of two million one hundred thousand dollars ($2,100,000.00), with an interest rate of "1.50% over the Primer (sic) rate floating, with a minimum rate of 6%" and other charges described in the note. The note contains language that indicates that it is payable upon presentation ("Maturity Date: On Demand") and it does not contain any other promise. Thus, the promissory note meets the requirements of the definition of a negotiable instrument and is governed by the Commercial Transactions Act.

In addition, under the "Term Loan Agreement" and a "Pledge and Security Agreement," Allied offered several mortgage notes executed by its borrowers as collateral. Section 4 of the security agreement specifically states that on the date of the execution of the agreement, the collateral is to be delivered to the "Bank," who shall hold it in possession and control. A review of the mortgage notes rendered as collateral by Allied to guarantee its obligation to pay under the "Term Loan Agreement" reflect that they are negotiable instruments, too. These notes show that they describe themselves as mortgage notes; they contain an unconditional promise to pay fixed amounts of money with interest rates and they refer to the mortgage deed that encumbers the real property that will serve as collateral for the loan. These

8

mortgage notes are payable upon presentation ("Due Date: On Demand") and they do not contain any other promise. As such, these mortgage notes are negotiable instruments governed by the Commercial Transactions Act.

Notwithstanding the previous analysis, Allied alleges that the transfer of the notes is not a secured transaction based on sections 9-109(d)(4), 9-109(d)(5) and 9-109(d)(11) of the Commercial Transactions Act. Allied argues that because these notes are not governed by the Commercial Transaction Act, it may exercise its right of redemption under the Civil Code. Allied rests on the theory that without the statutory protections afforded to secured transactions, the redemption right may be exercised against the notes. Sections 9-109(d)(4), 9-109(d)(5) and 9-109(d)(11) of the Commercial Transactions Act exempt certain instruments from being governed by Chapter 9 of the Commercial Transactions Act. We looked closely at these three sections to see if the notes fall within these three exceptions.

i.     Section 9-109(d)(4)

Section 9-109(d)(4) states that Chapter 9 of the Commercial Transactions Act does not apply to the sale of a promissory note "as part of a sale of the business out of which they arose." 19 L.P.R.A. § 2219(d)(4). In its opposition to WM's motion for summary judgment, Allied fails to explain how this section applies to its promissory note and merely states that WM is interested in collection purposes only.[4] The court deems this section inapplicable to the case at hand because WM did not purchase Scotiabank's business or any part of Scotiabank's business.  WM purchased a "Non-Performing Puerto Rico Commercial Loan Portfolio" which included Allied's loan from Scotiabank.

---

4 Docket No. 225, at 8.

9

ii.     Section 9-109(d)(5)

Section 9-109(d)(5) states that Chapter 9 of the Commercial Transactions Act does not apply to the assignment of a promissory note made for collection purposes only. 19 L.P.R.A. § 2219(d)(5).[5] Allied alleges that because WM's intent is to collect, its acquisition of the promissory note is not a secured transaction under Chapter 9 of the Commercial Transactions Act. We disagree. Just as DLJ, WM obtained the promissory note through an endorsement, making it the owner of the promissory note; not a collection agency that was assigned the note for collection purposes.

Because the text of the Commercial Transactions Act comes from the Uniform Commercial Code (U.C.C.), the court has looked to equivalent statutes in other jurisdictions. Professors David J. Leibson and Richard H. Nowka have stated in their U.C.C. treatise that Article 9 does not apply when the holder makes the assignment to a collection agency solely to facilitate collection of the debt. Leibson, David J. and Nowka, Richard H., The Uniform Commercial Code of Kentucky Section 9.01(d)(ii) (Matthew Bender, 3rd ed. 2004). In In re Gull Air, Inc., 90 B.R. 10 (Bankr. D. Mass. 1988), the court looked to the debtor's assignment of an account to its creditor and determined that Article 9 of the Massachusetts Uniform Commercial Code did not apply because it appeared that the assignment was made for the purpose of collection only. Id. at 14. The court analyzed the assignment of an account, not a negotiable instrument; however, the analysis is the same. In Matter of Biloxi Prestress Concrete, Inc., a debtor's creditor assigned an accounts receivable, without transferring title, to another of the debtor's creditor so that it could collect

---

5 This chapter does not apply to an assignment of accounts, chattel paper, payment intangibles, or promissory notes which is for the purpose of collection only. 19 L.P.R.A. § 2219(d)(5).

10

on its behalf. Matter of Biloxi Prestres Concrete, Inc., 98 F.3d 204, 206 (5th Cir. 1996). The Court of Appeals for the Fifth Circuit noted that the assignee did not pay the assignor for the account and that Article 9 was not applicable to this case because the creditors' actions amounted to an assignment for collection purposes only. Id. at 206 & 208.

iii.    Section 9-109(d)(11)

Section 9-109(d)(11) states that Chapter 9 does not apply to "the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder." 19 L.P.R.A. § 2219(d)(11). Allied argues that Scotiabank's transfer of the mortgage notes, that serve as collateral for the payment of the promissory note to WM are exempted from the secured transaction protections of Chapter 9 of the Commercial Transactions Act. A review of the promissory note and the mortgage notes in this case show that they do not create liens by themselves. Instead, the lien for the promissory note was created by a security agreement and the liens for the mortgage notes were created by mortgage deeds. The fact that a mortgage note is secured by a mortgage deed that encumbers real property does not defeat the negotiable instrument nature of the note and the applicability of Chapter 9 to these instruments. DLJ v. Santiago, 2019 T.S.P.R. 129, 17 (July 23, 2019). Negotiable instruments are governed by the Commercial Transactions Act and the creation of

11

mortgage liens is governed by the Mortgage Act.[6]

In summary, none of the three exceptions mentioned by Allied, apply to the promissory note or the mortgage notes. Consequently, we find that Allied's promissory note and the mortgage notes are negotiable instrument governed by the Commercial Transactions Act.

B. <u>Does the right of redemption of a litigious credit apply to Allied's promissory note and the mortgage notes?</u>

The redemption of a litigious credit is a legal concept that allows a debtor to extinguish an obligation by paying the price that the assignee of the credit paid for the same. 31 L.P.R.A. § 3950; <u>DLJ</u>, 2019 T.S.P.R. 129, 9.  In <u>DLJ v. Santiago</u>, 2019 T.S.P.R. 129 (July 23, 2019), the Puerto Rico Supreme Court recently had the opportunity to address if the right to redeem the litigated credit can be exercised over a negotiable instrument that is governed by the Commercial Transactions Act. It held that a plain reading of the Puerto Rico Civil Code, the Puerto Rico Mortgage Act, and the Puerto Rico Commercial Transactions Act leads to the conclusion that the right to redeem the litigated credit does not apply to negotiable instruments. <u>Id.</u> at 2. Allied opposes the application of the <u>DLJ v. Santiago</u> decision to this case on the grounds that the note executed by Allied is not a mortgage note, but rather a

---

6 Official Comment Number 5 of Section 9-109 of the Uniform Commercial Act (U.C.C.) explains that nothing in that section or any other provision of Article 9 prevents the transfer of full and complete ownership of an instrument. Uniform Commercial Code, 834 (2017-2018). Official Comment Number 7 of Section 9-109 of the U.C.C. explains that a security interest may not be obtained over a lien. It provides an example of an acceptable secured transaction under Article 9 of the U.C.C.:

Example 1: O borrows $10,000 from M and secures its repayment obligation, evidenced by a promissory note, by granting to M a mortgage on O's land. This Article does not apply to the creation of the real-property mortgage. However, if M sells the promissory note to X or gives a security interest in the note to secure M's own obligation to X, this Article applies to the security interest thereby created in favor of X. The security interest in the promissory note is covered by this Article even though the note is secured by a real-property mortgage.

Uniform Commercial Code, 835 (2017-2018).

12

promissory note which did not create any lien or security. As to the mortgage notes, Allied alleges that because they serve as collateral to the promissory note, they do not fall within the parameters of the Puerto Rico Supreme Court's decision in DLJ v. Santiago.[7]

In DLJ, a married couple was sued by CitiMortgage, Inc. for collection of monies and foreclosure. During the litigation, DLJ Mortgage Capital, Inc. appeared in the proceeding to inform that it had acquired the mortgage note executed by the Santiago-Ortiz family through a blank endorsement and asked the court to substitute CitiMortgage as the plaintiff. The defendants moved to exercise their right to extinguish the litigated credit, but the Court of First Instance denied their request on the basis that it was not timely exercised. The defendants filed a request for certiorari to the Puerto Rico Court of Appeals, which was denied, and then filed a certiorari to the Puerto Rico Supreme Court, which was granted.

To determine if the right to redeem a litigated credit applies to a negotiable instrument, the Puerto Rico Supreme Court pointed out that Article 1417a of the Puerto Rico Civil Code states that the right to redeem a litigious credit is inapplicable when the credit is a negotiable instrument. DLJ, 2019 T.S.P.R. 129, 12-13. The court found that mortgage notes are negotiable instruments, and therefore must be treated in accordance with the Commercial Transactions Act. DLJ, 2019 T.S.P.R. 129, 14. In analyzing Chapter 9 of the Commercial Transactions Act, which governs secured transactions, the Puerto Rico Supreme Court explained sections 9-109(d)(5) and 9-109(d)(11). DLJ, 2019 T.S.P.R. 129, 17-19. According to the court, section 9-109(d)(5) does not afford Chapter 9 protection to the assignment of a negotiable

---

[7] It is unclear if Allied seeks to redeem just the promissory note or the promissory note and the mortgage notes. Nevertheless, our analysis as to the promissory notes and the mortgage notes is the same.

13

instrument to a collection agency who is not the owner of the same. DLJ, 2019 T.S.P.R. 129, 18 (citing 11 Part I Anderson U.C.C. sec. 9-109:25 [Rev.] 3d. ed., 2018). In interpreting section 9-109(d)(11), the court stated that this section excludes from Chapter 9 a negotiable instrument that creates by itself an interest or lien, even if it was secured by one. DLJ, 2019 T.S.P.R. 129, 18-19. The Puerto Rico Supreme Court clarified that Chapter 9 covers mortgage notes because as negotiable instruments they are personal property, even though they are guaranteed by a mortgage deed that encumbers real property. DLJ, 2019 T.S.P.R. 129, 17.

Based on the Puerto Rico Supreme Court's analysis, the promissory note that evidences Allied's loan and the mortgage notes that serve as its collateral are negotiable instruments and therefore personal property that are governed by the Commercial Transactions Act. As previously discussed, the prohibitions mentioned in section 9-109(d)(4), section 9-109(d)(5) and section 9-109(d)(11) of the Commercial Transactions Act are not applicable to WM. The promissory note and the mortgage notes are negotiable instruments in nature, and this allows them to be negotiated and its transfer is protected under Chapter 9 of the Commercial Transactions Act. Thus, the Civil Code does not apply, and Allied is precluded from exercising its right to redeem the litigated credit. This court finds that the reasoning used in DLJ and a plain reading of the Puerto Rico Commercial Transactions Act warrants the granting of the summary judgment in favor of WM.

As a final matter, this court addresses Allied's allegation that the court is precluded from entering summary judgment in favor of WM because it would be a retroactive ruling that applies the DLJ case to a previous opinion and order that favors Allied, dated June 30, 2017. Rule 54(b) of the Federal Rules Civil Procedure states that an order that adjudicates fewer than all the claims does not end the action

14

as to any of the claims and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and responsibilities. Fed. R. Bankr. P. 7054(a)(incorporating Fed. R. Civ. P. 54(b)). It is well established law that a partial summary judgment has no res judicata effect. Federal Deposit Ins. Corp. v. Massingill, 24 F.3d 768, 774 (5th Cir. 1994). The order granting a partial summary judgment may be subject to revision by the court. Avondale Shipyards, Inc. v. Insured Lloyd's, 786 F.2d 1265, 1269 (5th Cir. 1986). As such, this court may grant WM's motion for summary judgment.

## VI. CONCLUSION

Therefore, this court relieves WM from the partial summary judgment order dated June 30, 2017 and grants its motion for summary judgment as to the redemption right and damages. Consequently, Allied's motion for summary judgment is denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th of April, 2020.

_____
MILDRED CABAN FLORES
U.S. Bankruptcy Judge

15